LAND, J.
Warren Ricks and Will Varna-■do were jointly indicted for tbe murder of Jefll Amacker on January 1, 1909. Ricks was granted a severance. Varnado was tried and convicted of manslaughter, and has appealed from a sentence of imprisonment at hard labor for 20 years.
A number of bills of exception are relied on for the reversal of the verdict and sentence. We will preface their consideration by a recital of the substance of the evidence as disclosed by the record. The most important witness for the state was Warren Ricks, who had agreed with the prosecuting officer to plead guilty to a charge of manslaughter. According to Ricks’ version, he and Varnado conspired to burn a vacant negro cabin on the land of Amacker. Var-nado was to set fire to the house, and then both were to appear on the scene, raise an alarm, and act as if they were trying to save the adjoining structures. This scheme was •carried out. Amacker appeared and shot Varnado. The two parties clinched, and in the struggle for the pistol Varnado was also ■shot in the leg. He called on Ricks for help, and Ricks, responding, mortally wounded Amacker with a discharge from a shotgun, and Varnado then shot Amacker several times with a pistol. According to Ricks’ version, the shotgun used by him must have been carried to the scene of the homicide by Varnado; but the sudden appearance of Amacker with his drawn pistol prevented Varnado from getting to his gun, and forced him to grapple with his adversary. There is evidence tending to support the contention of prosecution that Amacker was called out of his house by Ricks, or Varnado, or both of them, on the night of the homicide.
The theory of the prosecution was that the burning of the cabin was for the purpose of attracting Amacker to the scene of the fire with the view of making a deadly assault upon him; and counsel for the state argued that Varnado was, therefore, the aggressor in the difficulty and could not plead self-defense.
The contention of the defense was that the evidence did not show that Varnado set fire to the cabin, but that he appeared on the scene after the building had been fired, for the purpose of giving the alarm and preserving the adjacent structures; and, in the alternative, that the alleged arson had been completed before the arrival of Amacker at the place of the fire, and that the deceased shot Varnado for the supposed offense of arson, without other provocation.
There appears in the record an unsigned bill of exception (No. 11) containing an omnibus objection to the general charge of the court. Even had the bill been signed, an objection of this kind is not reviewable.
Bill No. 12 was reserved to the refusal of the judge to give certain special instructions on behalf of the defendant.
Bill No. 13 was reserved to the modification of certain special instructions numbered 1, 2, 3, and 4.
Bill No. 14 was reserved to special charges granted on behalf of the state.
No complaint is made in this court of the general instructions given by the trial judge to the jury. Among other matters the judge charged as follows, to wit:
“Attack provoked by defendant. The court instructs the jury that a party charged with an unlawful or deadly assault upon another cannot avail himself of necessary self-defense if the necessity for such defense was brought on by his own deliberate, wrongful act.”
This instruction is good law, and was amplified and explained in the special charges hereafter discussed.
Special charges 1, 2, 3, and 4, as shown by the record, do not disclose in what respect *737 the instructions were modified, and the hills of exception do not recite the special charges as requested. Under the circumstances, the court finds itself unable to determine what modifications were interpolated by the judge.
■ Counsel for defendant say in their brief that special charge No. 3 read originally as follows:
“If the jury believes from the evidence that, at the time Amacker shot, Yarnado was not attempting to commit a felony, Amacker was the aggressor in the difficulty.”
S.uch a charge should hav.e been refused because it makes the judge state that Amacker did shoot Varnado, a question of fact solely for the jury, and assumes that Varn-ado made no assault on Amacker and did nothing else to provoke the difficulty. The asserted modification was:
“And had not brought on or provoked the difficulty by word or deed.”
On the same page of the record, we find that the judge also charged ■ the jury that one can only kill to save life, or limb, or “prevent a great crime,” and that homicide is justified when committed for the purpose of preventing a felony, but not when committed as a punishment for a felony already committed.
Special charge No. 1, as expurgated by counsel, reads as follows:
“The defendant asks the court to instruct the jury that, if they have a reasonable doubt as to whether or not the accused was actually engaged in the commission of a crime or unlawful act at the time of the killing, then the. accused is entitled to exercise the right of self-defense, and is justified in killing his assailant in defense of his life.”
The alleged interpolation reads as follows :
“And further believes that the accused was acting in good faith and was not the provoker of the difficulty.”
Doubt as to whether the accused was actually engaged in the commission of the crime of arson at the time of the homicide eliminates that feature of the prosecution, but leaves the case to be determined by the ordinary rules of self-defense, which were fully stated in the general and special charge. This right does not exist in favor of the provoker of the difficulty, and this we assume is what the court intended by the alleged modification.
Special charge No. 2, as expurgated, reads as follows:
“The defendant asks the court to instruct the jury that, if they believe from the evidence that a conspiracy was entered into by the accused to set fire to a house, the conspiracy terminated when the purpose for which said conspiracy was formed or entered into had been accomplished.”
And it is asserted that the judge interpolated the following words:
“But that the defendants are responsible for whatever consequences arise directly or indirectly from said felonious act, and if, as a consequence of and growing out of the perpetration of a felony, the life of a human being is taken, the crimé would be murder.”
The requested charge consisted of the abstract proposition that a conspiracy terminates with the accomplishment of the purpose for which it was formed, and the alleged interpolation consists of the abstract proposition that defendants are responsible for the consequences arising directly or indirectly from a felonious act, and that if, as a consequence and growing out of the perpetration of a felony, the life of a human being is taken, the crime would be murder. We fail to see what practical bearing either proposition had on the issues before the jury. We are persuaded, however, that these abstractions did not influence the verdict of the jury, who were otherwise properly charged on the law applicable to the facts of the particular case.
The bill on page 11 of the record, and marked “3” in the margin, was properly refused, as trenching on the facts of the case.
Defendant excepted to a special charge *739 given on behalf of the prosecution, as follows :
“A man has n.o right to assault another under even high provocation; but the law proper in its wisdom does not allow the person who provokes a difficulty to avail himself of the law 'of self-defense, and before he has that right he must use every available means in his power to escape the assault.”
All the evidence that was adduced on the trial of the case is not in the record, and therefore there is no proper basis for the objection that the said special charge was not applicable to the facts of the case. We gather from the record that there was evidence tending to show that Yarnado not only set fire to the building, but was there present armed with a shotgun when Amacker arrived on the scene. Moreover, there is evidence that Varnado and Ricks called Amacker out of his dwelling. It was for the jury to determine under all the facts and circumstances of the case whether the actions and conduct of Varnado on the occasion in question were intended to and did bring on the difficulty.
Defendant excepted to another special charge given on behalf of the prosecution, as follows:
‘‘The right of self-defense lasts only as long as the necessity, real or apparent, for it exists. In other words, if A. is attacked by B. with a deadly weapon, and a struggle ensues, and during the struggle A. obtains possession of the weapon, thus disarming B., and upon obtaining possession of the weapon, B. being disarmed, A. shoots or stabs him, A. cannot avail himself of the plea of self-defense.”
The proposition charged is sound law, and it was for the jury to determine whether there was any real or apparent necessity for the killing of Amacker by his two adversaries under the facts and circumstances of the case.
Defendant also objected to requested instructions on the part of the prosecution on the subject of self-defense, and more especially as to the rule that the accused must be without fault in bringing on the difficulty. The special paragraphs objected to read as follows.:
“And where any pretext, design, contrivance, fraud, or excuse is resorted to, to bring on a difficulty or to provoke the occasion of one, the person using it will be regarded as the aggressor therein.”
“And any act of a person by which he puts himself in the way of being assaulted, in order that when hard pressed he may have a pretext for taking the life of his assailant, amounts to the bringing on of a difficulty.”
Both of these propositions are supported by decisions of courts of last resort in our sister states. The judge also charged:
“If the accused intended to provoke a difficulty, and used such means as he thought would provoke it, and they did provoke it, it is all that is necessary” — citing McCandless v. State, 42 Tex. Or. R. 58, 57 S. W. 672.
The objection that the above special charges and others are not applicable to the facts of the case is without merit on the face of the record, which does not contain all the evidence adduced on the trial of the case. The general charge and special charges taken together were fair to the accused, and we do not think that he has any just reason to complain of them.
The contention that the defendant was convicted on the uncorroborated evidence of his accomplice, Ricks, who was not worthy of belief, has no basis on the record before us, which shows that several other witnesses testified on the trial of the cause, among them the widow of the deceased.
Bill No. 3 was reserved to a ruling admitting the testimony of Mrs. Amacker, as to statements of other parties in the presence and hearing of Varnado immediately after the shooting. We see no error in the ruling. It was proper to admit the whole of the particular conversation in which Varnado, the witness, and the bystanders participated.
Bill No. 4 was reserved to the ruling of the judge in refusing to permit the defendant to question the witness Warren Ricks before his direct examination as to what in *741 ducements had been offered him to testify on behalf of tbe state. The judge reserved the right of the defendant to cross-examine the witness as to such inducements and all other matters. As the proposed questions did not go to the competency but to the credibility of the witness, the ruling was correct. The evidence of an accomplice given on the trial of the cause should not be confused with his confessions or admissions in or out of court.
Bill No. 7 was reserved to the cross-examination of a witness for the defendant recalled to impeach a witness for the prosecution. The cross-examination was admissible for the purpose of impeaching the impeaching witness.
Bill No. 9 was reserved to testimony offered in rebuttal, by the state to sustain the testimony of Ricks, which the defendant had sought to impeach by two witnesses. We see no reversible error in the ruling of the judge.
Bill No. 16 was taken to the refusal of the ■court to instruct the jury to disregard the testimony of Ricks because he was an accomplice. The judge properly charged the jury that the uncorroborated testimony of an accomplice should be received with great caution, and that it was unsafe to base a verdict on such testimony.
Bill No. 17 was reserved to certain remarks of the district attorney in his opening argument, in substance as follows:
“That the testimony of Ricks, or R. S. Var-nado, or both, in regard to the killing of Amacker, was to be taken for true, because nobody had taken the stand to deny it.”
The objection was that said remarks were a comment on the fact that the accused had not testified in his own behalf. The judge states that there were several other witnesses present at the scene of the killing, to wit, Mrs. Amacker and her children, and Mrs. Scott Varnado, and others, and that he understood that the district attorney alluded to the witnesses in the case. The judge further states that he offered to charge the judge properly on the subject-matter, or to discharge the jury; but that counsel for the defendant objected to the discharge of the jury, and that he thereupon turned to the jury and charged them that the failure of the accused to testify must not be considered for or against him, and if he failed' to take the stand, and the jury were to construe it against him, it would be a violation of their oaths. The same instructions were repeated in the general charge. Counsel for the accused in objecting to the discharge of the jury must have considered that any prejudicial effect of the remarks made by the prosecuting officer had been removed by the -instruction of the court. It is not clear that the remarks were intended as a comment on the failure of the accused to testify, and we think that the prompt action of the court removed any possible prejudicial effect from the minds of the jury. The accused then refused the offer of a venire de novo, and took his chances of acquittal before the jury. He cannot now be permitted to urge that the trial jury was incompetent by reason of prejudice.
Bill No. 15 was reserved to the action of the trial judge in not discharging the jury and entering a mistrial, when the jury reported on a Sunday that they could not agree and were “hopelessly tied up,” and also in recording the verdict and discharging the jury later on the same day. The judge states that on the Sunday in question, being notified that the jury was ready to report, he had the accused brought into court, his counsel being present, and had the jury polled, and the foreman informed him that they could not agree; that thereupon the judge stated that he could only convene court for the purpose of receiving a verdict, and ordered the jury to their room for further deliberation; that the jury, on the same day, *743 finally agreed, and tlie verdict was received by tbe court and ordered recorded and tbe jury discharged.
In the Fuselier Case, 51 La. Ann. 1317, 26 South. 2G4, tills court held that the discharge of a jury.for disagreement is a matter in the discretion of the trial judge and not ordinarily subject to review. The detention of a jury for a few hours longer cannot be considered as coercion.
It is settled beyond controversy that the receiving and recordation of a verdict on a Sunday or other dies non juridicus is permissible. See State v. Atkinson, 104 La. Ann. 570, 29 South. 279, and authorities there cited.
There was no bill of exception taken to the overruling of the defendant’s motion for a new trial, and therefore the action of the judge in overruling the motion cannot toe reviewed quoad matters not embraced in the bills of exception, or patent on the face of the record, such as the charge that a letter dehors the evidence was improperly read by the district attorney to the jury in the course of argument.
After a careful consideration of all the bills of exception discussed in the briefs of counsel for the accused, and a review of the entire record of the case, we are satisfied that the defendant has had a fair trial according to the laws of the land.
It is therefore ordered that the verdict and sentence below be affirmed.